JAMES F. McKAY, III, Judge.
 

 | [The New Orleans Police Department (NOPD), seeks reversal of the decision of the Civil Service Commission (Commission), granting in part the appeal of Lieutenant Blaine Austin, an employee of the NOPD. Specifically, the NOPD argues the Commission acted arbitrarily and capriciously in granting Lieutenant Austin’s appeal as lawful cause existed for the discipline imposed by the NOPD. For the following reasons, we affirm.
 

 STATEMENT OF FACTS/PROCEDURAL HISTORY
 

 At the time of the alleged incident, Blaine Austin was employed by the NOPD as a Lieutenant with permanent status and assigned to the Second District.
 
 [1]
 
 He was initially hired by the NOPD on July 28, 1985.
 

 On or about February 26, 2008, Lieutenant Austin, while driving his police unit, a 2006 Ford Expedition designated as unit #220, backed into a dumpster located in the parking lot of the Second District police station. He asserts that he examined the vehicle but did not notice any damage. On that same date, at 2:40 a.m., after leaving the Walgreens Drug Store on South Carrollton Avenue, he noticed damage to the unit. Subsequent to this discov
 
 *988
 
 ery, as per departmental rule, |?he made two incident reports under item number B-30478-08. The initial report was made to Officer Shannon Jones and the second, a hit and run report, to Officer Kendrick Allen.
 

 On March 10, 2008, Captain Kirk Bouye-las (“Deputy Chief Bouyelas”), Commander of the Second District, discovered damage to unit #220 and opined that the damage to the vehicle appeared as though it lined up with the dumpster.
 
 [2]
 
 He recreated the scene which showed that the dumpster part fit into the damage to the unit. He ordered a departmental investigation into the incident. Lieutenant Ronald Laporte Jr. was assigned to conduct the investigation.
 

 On October 6, 2008, Lieutenant Austin received a disciplinary letter charging him with violating the departmental rules regarding truthfulness; professionalism; instructions from an authoritative source, to wit: departmental property; performance of duty, neglect of duty; and false or inaccurate reports (two counts). On January 15, 2009 and March 15, 2009, hearings were held before the hearing officer for the appointing authority. Following the hearings, the NOPD suspended Lieutenant Austin for ten days for violation of internal rules regarding truthfulness; ten days for the violation of filing a false or inaccurate police report; and two one-day suspensions for sustained violations of instructions from an authoritative source, and additionally demoted him to the rank of Police Officer IV. Lieutenant Austin filed an appeal with the Commission.
 

 On January 15, 2009, at the appeal hearing before the Commission, the NOPD called Lieutenant Laporte, the investigating officer, as a witness. Lieutenant La-porte testified that on February 26, 2008, a report was generated | regarding damage to Unit # 220, a vehicle used by ranking officers. NOPD Officer Jones prepared the miscellaneous report, which states:
 

 At 2:40 a.m., Sgt. Austin parked Unit 220, A# (number) 06006 at 2418 S. Car-rollton Avenue. Upon returning to the vehicle, Sgt. Austin observed a tear and dent on the rear door near the handle. The damage was not observed by Sgt. Austin during the inspection of the vehicle prior to beginning the tour of duty. Sgt. Austin relocated to 4317 Magazine Street (Second District Station) to check the vehicle damage log. The damage had not been listed in the vehicle damage log. Officer Jones observed the dent and tear on the rear door near the handle.
 

 Lieutenant Laporte testified that the administrative sergeant, Sergeant Young, required a hit and run report to be completed on this incident. On March 7, 2008, NOPD Officer Allen completed a hit and run report which provides:
 

 Officer spoke with Sergeant B. Austin who stated the he legally parked unit 220 at 2418 S. Carrollton. Upon returning to the vehicle, he observed that the rear door had a tear in the metal and a dent in the door. Sgt. Austin stated that before this incident the damage to the door was not there. Sgt. Austin stated that he canvassed the parking lot for any other damage (sic) vehicles but met with negative results.
 

 Lieutenant Laporte testified that a few weeks later, on March 10, 2008, Deputy Chief Bouyelas noted that the damage on Unit 220 lined up with the outside dumpster and ordered an investigation to determine how Unit 220 sustained damage. During the course of the investigation,
 
 *989
 
 Lieutenant Laporte testified that he lined up the dumpster and the vehicle and the damage on Unit 220 matched up with the edge of the dumpster. Further, Lieutenant Laporte testified that Lieutenant Austin admitted he backed up into the dumpster, got out and looked at the back bumper. Lieutenant Laporte testified that Lieutenant Austin believed that Unit 220 did not sustain damage as a result of backing into the dumpster and did not report the incident with the dumpster. Lieutenant Austin did not notice any damage to the vehicle until later that evening while parked at a |4Walgreen’s drug store. Lieutenant Laporte testified that Lieutenant Austin did not know that the damage occurred from the incident with the dumpster, but Lieutenant Laporte believed that Lieutenant Austin should have known his bumping into the dumpster resulted in damage. Lieutenant Laporte admitted that every violation he found Lieutenant Austin to have violated is based upon whether or not Lieutenant Austin knew that damage occurred to the vehicle when he backed into the dumpster. While the disciplinary letter concluded that Lieutenant Austin stated that the damage occurred in the parking lot of the Walgreen’s drug store, Lieutenant Laporte confirmed that Lieutenant Austin never claimed the damage occurred in the parking lot of the Walgreen’s drug store, but that Lieutenant Austin first noticed the damage in the parking lot. Lieutenant Laporte testified that had Lieutenant Austin observed the damage while in the parking lot of the Second District Station and reported it, he would probably have received a letter of reprimand.
 

 Lieutenant Laporte testified that when damage to a police unit occurs, the police officer involved is required to contact his supervisor so that the supervisor can proceed to the scene where the vehicle sustained damage. The police officer is also required to notify the dispatcher. In this instance, Lieutenant Laporte testified that Lieutenant Austin failed to notify his supervisor and have his supervisor meet him at the scene where the vehicle sustained damage.
 

 Lieutenant Laporte stated that the parking lot at the Second District Station is dark and admitted that although there is a light, sometimes the light does not work. He testified that on the night of the incident in question, Lieutenant Austin reported for duty at 10:25 p.m., so it was dark. Additionally he testified that ^Lieutenant Austin had only been stationed at the Second District for two days at the time of the incident.
 

 The NOPD lastly called Deputy Chief Bouyelas who testified that as he was sitting at his desk during the day and noticed the damaged Unit 220 and the dumpster. He opined that if Unit 220 backed into the dumpster, the damaged area would fit a particular section of the dumpster. He stated that he did not know if the damage would be noticeable if the light were not working. Deputy Chief Bouyelas testified that he believed that Lieutenant Austin’s actions were egregious and that Lieutenant Austin had a duty to notify a supervisor as soon as he hit the dumpster, even if he believed that the vehicle sustained no damage. Deputy Chief Bouyelas opined that had Lieutenant Austin reported the damage immediately after hitting the dumpster, the recommended penalty would have probably been a letter of reprimand.
 

 Lieutenant Austin testified that on February 26, 2008, he reported for his second day of duty at the Second District Station. Lieutenant Austin stated he completed some work at the station before leaving to go out on the street around midnight. As he backed Unit # 220 up at a speed of one or two miles per hour, he heard a noise, stopped and got out. He noticed that the dumpster was not pushed up back against
 
 *990
 
 the wall, so he pushed the dumpster back. He asserts that he looked at the bumper, but did not see any new damage. He testified that the light in the parking lot was not working or was not on and that it was really dark outside.
 

 Subsequent to this incident he continued with his police duties. He later pulled into the parking lot of a Walgreen’s drug store and parked with the back of his vehicle facing the building. He testified that when he exited the store after | (¡obtaining something to drink, he noticed damage on the right side of the rear handle of his unit. He opined that the damage appeared to have been caused by someone hitting the vehicle with a tire iron or the like. He also noticed some rust and believed that the damage might be old, but since he was new to the district, he was not sure. To determine if the damage was old, he returned to the Second District Station to review the damage log book. After determining that the damage was not previously reported, Austin notified his supervisor, Lieutenant Mims, of the situation. They both agreed that a miscellaneous report should be prepared as it was not known how Unit # 220 sustained the damage. Days later, Sergeant Young instructed Lieutenant Austin to have a hit and run report prepared regarding the damage, which was prepared per Sergeant Young’s instruction.
 

 Lieutenant Austin testified that he never gave an untruthful statement, and that he never stated to anyone that the damage occurred in the parking lot of the Walgreen’s drug store, but rather that he first noticed the damage when the vehicle was in the parking lot of the Walgreen’s drug store. Lieutenant Austin stated that had he noticed the damage in the parking lot of the Second District Station, he would have reported it. He testified that he had no reason to hide such an incident as he has a great driving record.
 

 The hearing officer submitted a report to the Commission which found Lieutenant Austin to be credible and which recommended the appeal be granted in part and denied in part. The hearing officer believed the appeal should be granted as to all violations except for neglecting departmental property. The hearing officer believed the penalty for such a violation should be a letter of reprimand.
 

 The Commission issued a decision which found Lieutenant Austin’s testimony to be credible. The Commission noted that the damage was located in |7an unusual location on the vehicle where it would not have been readily noticeable in a dark area. The Commission granted the appeal of Lieutenant Austin as to the alleged violations of departmental rules on truthfulness, filing false or inaccurate reports and instructions from an authoritative source as those violations were not supported by the evidence. As to the alleged violation of the departmental rule on neglect of duty, the Commission found that the penalty imposed was not commensurate with the offense and ordered the NOPD to issue a letter of reprimand for Lieutenant Austin’s neglecting departmental property.
 

 STANDARD OF REVIEW
 

 The Commission has authority to “hear and decide” disciplinary cases, which includes the authority to modify (reduce) as well as to reverse or affirm a penalty. La. Const. art. X, § 12;
 
 Pope v. New Orleans Police Dept.,
 
 2004-1888, p. 5 (La.App. 4 Cir. 4/20/05), 903 So.2d 1, 4. The appointing authority is charged with the operation of its department, and it is within its discretion to discipline an employee for sufficient cause. The Commission is not charged with such discipline. The authority to reduce a penalty can only be exercised if there is insufficient cause for imposing the greater penalty.
 
 Pope,
 
 2004-1888, pp. 5-6, 903 So.2d at 4.
 

 
 *991
 
 The appointing authority has the burden of proving, by a preponderance of the evidence, that the complained of activity or dereliction occurred, and that such dereliction bore a real and substantial relationship to the efficient operation of the appointing authority.
 
 Cure v. Dept. of Police,
 
 2007-0166, p. 2 (La.App. 4 Cir. 8/1/07), 964 So.2d 1093, 1094,
 
 citing Marziale v. Dept. of Police,
 
 2006-0459, p. 10 (La.App. 4 Cir. 11/8/06), 944 So.2d 760, 767. The protection of civil service employees is only against firing (or other discipline) without cause. La. Const. art. |SX, § 12;
 
 Cornelius v. Dept. of Police,
 
 2007-1257, p. 8 (La.App. 4 Cir. 3/19/08), 981 So.2d 720, 724,
 
 citing Fihlman v. New Orleans Police Dept.,
 
 2000-2360, p. 5 (La.App. 4 Cir. 10/31/01), 797 So.2d 783, 787.
 

 The decision of the Commission is subject to review on any question of law or fact upon appeal to this Court, and this Court may only review findings of fact using the manifestly erroneous/clearly wrong standard of review. La. Const. art. X, § 12;
 
 Cure,
 
 2007-0166, p. 2, 964 So.2d at 1094. In determining whether the disciplinary action was based on good cause and whether the punishment is commensurate with the infraction, this Court should not modify the Commission order unless it was arbitrary, capricious, or characterized by an abuse of discretion.
 
 Id.
 
 A decision of the Commission is “arbitrary and capricious” if there is no rational basis for the action taken by the Commission.
 
 Cure,
 
 2007-0166, p. 2, 964 So.2d at 1095.
 

 Even where there is conflicting testimony, credibility evaluations cannot be disturbed on review.
 
 Williams v. Sewerage and Water Bd.,
 
 2004-0025, p. 7 (La.App. 4 Cir. 5/19/04), 876 So.2d 117, 121,
 
 citing Moore v. New Orleans Police Dept.,
 
 2001-0174, p. 8 (La.App. 4 Cir. 3/7/02), 813 So.2d 507, 511. Unless clearly contrary to the evidence, credibility determinations are within the discretion of the trier of fact and will not be disturbed by the reviewing court.
 
 State v. Marshall,
 
 2004-3139, p. 9 (La.11/29/06), 943 So.2d 362, 369,
 
 citing State v. Vessell,
 
 450 So.2d 938, 943 (La.1984).
 

 DISCUSSION
 

 The NOPD argues the Commission acted arbitrarily and capriciously in reversing the discipline of the NOPD and substituting a letter of reprimand.
 

 |3The NOPD argues the Commission acted arbitrarily and capriciously as lawful cause exists for the discipline imposed on Lieutenant Austin. In this instance, the NOPD bore the burden of proving that Lieutenant Austin violated the departmental rules regarding truthfulness; professionalism; performance of duty, instructions from an authoritative source, to wit: departmental property; performance of duty, neglect of duty; and false or inaccurate reports (two counts).
 

 The NOPD concluded that Lieutenant Austin violated the department rule on truthfulness in that he lied to Lieutenant Mims and told Lieutenant Mims that the damage occurred outside of a Walgreen’s drug store, causing Lieutenant Mims to document the false information in a supervisor’s report. The NOPD failed to call Lieutenant Mims to testify and instead called Lieutenant Laporte. However, Lieutenant Laporte also testified that Lieutenant Austin first noted the damage when he was in the parking lot of the Walgreen’s drug store.
 

 Lieutenant Austin testified that he first observed the damage in the parking lot of Walgreen’s drug store. Further, the NOPD failed to introduce the supervisor’s report. Instead, the two reports submitted into evidence by the NOPD both reveal that Lieutenant Austin stated that he observed the damage to the vehicle while in the parking lot of Walgreen’s drug store.
 
 *992
 
 The Commission determined that Lieutenant Austin’s testimony was credible. As the decision of the Commission is not clearly contrary to the evidence, there exists a rational basis for the decision of the Commission in regards to this alleged violation.
 

 The NOPD concluded that Lieutenant Austin violated the departmental rule on professionalism in that he lied to the officers who prepared the reports and to his supervisor by failing to report the incident with the dumpster. Lieutenant Austin notified his supervisor immediately upon determining that the damage, first Imobserved in the parking lot of the Walgreen’s drug store, was not old damage. Lieutenant Austin did not believe that his bumping into the dumpster caused any damage because he did not observe any damage to the vehicle immediately thereafter. Lieutenant Laporte testified that when asked if he hit the dumpster, Lieutenant Austin admitted he did and explained that he checked the vehicle for damage, in the dark parking lot, and found none. Lieutenant Laporte also testified that the parking lot is dark and that the light does not always work. The Commission determined that Lieutenant Austin’s testimony was credible. As the decision of the Commission is not clearly contrary to the evidence, there exists a rational basis for the decision of the Commission in regards to this alleged violation.
 

 The NOPD concluded that Lieutenant Austin violated the departmental rule on performance of duty, instructions from an authoritative source, to wit: departmental property in that he failed to immediately notify the dispatcher and supervisor when he bumped into the dumpster. There are two applicable rules regarding damaged departmental property and notification in the event of damage. The first rule provides that “if an employee discovers damage or malfunction during his inspection of the vehicle, the employee shall immediately notify his supervisor.” Rule 4, Performance of Duty, Chapter 17.2 Departmental Property, Damage to Vehicles or Equipment. The second rule provides that “when an operator of a departmental vehicle is involved in a traffic accident, he shall immediately notify the dispatcher and his supervisor.” Rule 4, Performance of Duty, Chapter 17.2.50 Departmental Property, Administrative Reports of Traffic Accidents.
 

 | n Lieutenant Laporte testified that a supervisor is required to be notified so that the supervisor can go to the scene to see if there is any evidence and do some type of investigation. In the instant matter, Lieutenant Austin testified that as soon as he determined that there was new damage to the vehicle, he contacted his supervisor. Lieutenant Laporte testified that Lieutenant Austin contacted his supervisor once Lieutenant Austin was back at the Second District Station. Lieutenant Austin testified that a dispatcher is not required to be notified when damage is merely discovered on a vehicle, only in the event of a traffic accident. The Commission determined that Lieutenant Austin’s testimony was credible. As the decision of the Commission is not clearly contrary to the evidence, there exists a rational basis for the decision of the Commission in regards to this alleged violation.
 

 The NOPD concluded that Lieutenant Austin violated the departmental rule on performance of duty, neglect of duty, because as a supervisor, Lieutenant Austin consistently failed to demonstrate that he could perform as a supervisor. In support of this conclusion, the NOPD cited Deputy Chief Bouyelas’s testimony wherein he testified that Lieutenant Austin admitted he backed into dumpster and caused damage, but failed to notify supervisor and caused two officers to file false police reports.
 
 *993
 
 Deputy Chief Bouyelas’s conclusion is not supported by the other testimony and evidence. Lieutenant Austin admitted he backed into dumpster, but at no time did Lieutenant Austin admit that at the time he backed into the dumpster, he knew that he caused damage. Lieutenant Austin notified his supervisor as soon as he determined that the damage to the vehicle was not old damage. Lieutenant Austin testified he first observed the damage to the vehicle in the parking lot of the Walgreen’s drug store. The NOPD submitted two police | ^reports into evidence, both of which reflect that Lieutenant Austin informed the reporting officers that he first observed the damage to the vehicle in the parking lot of the Walgreen’s drug store. The Commission determined that Lieutenant Austin’s testimony was credible. As the decision of the Commission is not clearly contrary to the evidence, there exists a rational basis for the decision of the Commission in regards to this alleged violation.
 

 Finally, the NOPD concluded that Lieutenant Austin violated the departmental rule on false or inaccurate reports. In regards to the first report, the miscellaneous report, the disciplinary letter states Lieutenant Austin lied to Officer Jones, causing her to generate a false and inaccurate miscellaneous report, plus Lieutenant Austin intentionally withheld information from the report. In its brief, the NOPD cites Lieutenant Laporte’s testimony in support of the conclusion that Lieutenant Austin lied to Officer Jones. Lieutenant Laporte testified that if the damage occurred at the station and Lieutenant Austin knew about it, then it would be a false and inaccurate report. Lieutenant La-porte based his finding of a violation of the rule as Lieutenant Laporte believed the damage occurred at the station, not at the Walgreen’s drug store. However, Lieutenant Austin testified that he first observed the damage at the Walgreen’s drug store. The miscellaneous report also states that Lieutenant Austin first observed the damage at the Walgreen’s drug store. Lieutenant Austin testified that the parking area was dark with no working light. Lieutenant Laporte admitted that the light in the parking area is often out. Lieutenant Austin testified that he did not notice the damage to the vehicle as he looked at the bumper and it was dark. There is no evidence in the record which suggests that Lieutenant Austin intentionally withheld information from the report. The Commission determined that Lieutenant Austin’s testimony | iswas credible. As the decision of the Commission is not clearly contrary to the evidence, there exists a rational basis for the decision of the Commission in regards to this alleged violation.
 

 In regards to the second report, the hit and run report, the disciplinary letter states Lieutenant Austin lied to Officer Allen, causing him to generate a false and inaccurate report, plus Lieutenant Austin intentionally withheld information from the report. In its brief, the NOPD again cites Lieutenant Laporte’s testimony in support of its conclusion that Lieutenant Austin lied and intentionally withheld information. During his testimony, Lieutenant Laporte was asked whether he determined that any damage occurred at the Walgreen’s drug store. Lieutenant Laporte testified that no damage occurred there. Lieutenant Laporte then concluded that the hit and run report was not accurate. However, the report does not state that Lieutenant Austin claimed the damage occurred at the Walgreen’s drug store. The report states that Lieutenant Austin first observed damage to the vehicle while in the parking lot of the Walgreen’s drug store. Lieutenant Austin testified that he first observed the damage to the vehicle while in the parking lot of the Walgreen’s drug store. The Commission determined that Lieutenant
 
 *994
 
 Austin’s testimony was credible. As the decision of the Commission is not clearly contrary to the evidence, there exists a rational basis for the decision of the Commission in regards to this alleged violation.
 

 Our review of the record reveals that the credibility determination made by the Commission was not clearly contrary to the evidence and provides a rational basis for the decision of the Commission. Hence, we find that the Commission did not act in an arbitrary or capricious manner.
 

 114Lieutenant Laporte and Deputy Chief Bouyelas both testified that had Lieutenant Austin observed the damage to the vehicle in the parking lot of the Second District Station, Lieutenant Austin would have probably only received a letter of reprimand. The Commission ordered the NOPD to issue a letter of reprimand for Lieutenant Austin’s neglecting departmental property. Considering our finding that the Commission’s credibility determination was not clearly contrary to the evidence, there is insufficient cause for the NOPD to impose a greater penalty for such a violation. Further, a rational basis exists for the decision of the Commission revoking the penalty imposed and ordering the NOPD to issue a letter of reprimand instead. Thus, we find that the Commission did not act in an arbitrary or capricious manner.
 

 For the above and foregoing reasons, we affirm the Commission’s decision.
 

 AFFIRMED.
 

 [1]
 

 . Although Lieutenant Austin’s rank changed throughout these proceedings from Sergeant to Lieutenant to Police IV, throughout this opinion, for consistency, we will reference his rank as Lieutenant.
 

 [2]
 

 . Throughout this opinion we will reference Captain Bouyelas at his current rank as Deputy Chief Bouyelas.