CHASE BRUNER       \*       **NO. 2025-CA-0386**

**VERSUS**       \*       **COURT OF APPEAL**

**NEW ORLEANS FIRE**       \*       **FOURTH CIRCUIT**
**DEPARTMENT**

      \*       **STATE OF LOUISIANA**

\* \* \* \* \* \* \*

APPEAL FROM
CITY CIVIL SERVICE COMMISSION ORLEANS
NO. 9638,
Honorable Jay Alan Ginsberg, Hearing Officer
\* \* \* \* \* \*
**JUDGE SANDRA CABRINA JENKINS**
\* \* \* \* \* \*
(Court composed of Judge Daniel L. Dysart, Judge Sandra Cabrina Jenkins, Judge Karen K. Herman)

Louis L. Robein
Zachary Shepherd
ROBEIN, URANN, SPENCER, PICARD & CANGEMI, APLC
2540 Severn Avenue
Suite 400
Metairie, LA 70002

      COUNSEL FOR PLAINTIFF/APPELLEE

William R. H. Goforth
Deputy City Attorney
Averil Sanders, Jr.
Assistant City Attorney
Donesia D. Turner
City Attorney
1300 Perdido Street, Room 5E03
New Orleans, LA 70112

      COUNSEL FOR DEFENDANT/APPELLANT

                       **AFFIRMED**
                 DECEMBER 15, 2025

In this civil service matter, firefighter Chase Bruner ("Mr. Bruner") was suspended for six hours by the New Orleans Fire Department ("NOFD") for reckless and unsafe operation of a City of New Orleans vehicle. Mr. Bruner appealed to the Civil Service Commission ("the Commission"). The Commission granted Mr. Bruner's appeal and reversed the disciplinary action, finding that NOFD failed to complete its investigation within sixty days as set forth in La. R.S. 33:2186. NOFD appealed the decision. For the reasons set forth below, we affirm the Commission's decision.

## FACTS AND PROCEDURAL HISTORY

On April 11, 2024, Mr. Bruner had an overtime shift as an ambulance driver for New Orleans Emergency Medical Services ("EMS"). During his shift, Mr. Bruner violated multiple traffic laws, specifically, racing another ambulance, excessive speeding and driving on the wrong side of the street. The EMS in-vehicle camera system flagged a sudden brake event, prompting EMS Major Gerardo Figueroa-Camps ("Major Figueroa-Camps") to review and send the full video footage to EMS Deputy Chief Chris Keller ("Chief Keller") on April 18,

1

2024. Thereafter, Chief Keller emailed NOFD about Mr. Bruner's traffic violations.

The NOFD requested the video from EMS on April 19, 2024, and EMS provided the video on the same date. The NOFD Chief Armand Bourdais ("Deputy Chief Bourdais") discovered on May 9, 2024, that the link for the video was inactive and requested access to the video link. Deputy Chief Bourdais received access on the same day. On June 21, 2024, NOFD Superintendent Roman Nelson issued a letter to Mr. Bruner informing him that he was charged for violating NOFD Rule RR5, which requires compliance with City of New Orleans policies, specifically CAO Policy 5(R) concerning driving standards. The letter further stated that Mr. Bruner would be suspended for six hours.

Mr. Bruner appealed his suspension to the Civil Service Commission. A hearing took place on November 15, 2024. On May 8, 2025, the Commission granted Mr. Bruner's appeal and ordered NOFD to reimburse Mr. Bruner for all lost wages and emoluments of employment from his six-hour suspension. The Commission found that NOFD failed to comply with sixty-day investigatory timeline in the Firefighter Bill of Rights. It is from this decision that NOFD appeals.

## DISCUSSION

While NOFD asserts four assignments of error, we narrow our discussion to two issues: 1) whether the Commission erred in finding that NOFD's disciplinary action was untimely based on its failure to comply with the sixty-day deadline in

the Firefighter Bill of Rights and 2) whether the Commission relied in the Attorney General's Opinion to overturn NOFD's disciplinary action.[1]

### *Standard of Review*

An employee who faces disciplinary action by his or her appointing authority has the right to appeal to the Commission. *Martin v. Dep't of Fire*, 2021-0070, p. 3 (La. App. 4 Cir. 10/20/21), 331 So.3d 379, 382 (citing *Honore' v. Dep't of Public Works*, 2014-0986, p. 8 (La. App. 4 Cir. 10/29/15), 178 So.3d 1120, 1126). "[T]he appointing authority must prove by a preponderance of the evidence good or legal cause for taking disciplinary action." *Id.* (citing *Honore'*, 2014-0986, p. 8, 178 So.3d at 1126-27).

On appeal of the Commission's decision, appellate courts apply the manifest error/clearly wrong standard of review to factual determinations. *Martin* at p. 4, 331 So.3d at 382 (citing *Waguespack v. Dep't of Police*, 2012-1691, p. 3 (La. App. 4 Cir. 6/26/13), 119 So.3d 976, 978). Whereas, the appellate court reviews "procedural decisions of the Commission 'under our traditional plenary function of insuring procedural rectitude' and examine questions of law *de novo*." *Neely v. Dep't of Fire*, 2021-0454, p. 6 (La. App. 4 Cir. 12/1/21), 332 So.3d 194, 201 (citing *Byrd v. Dep't of Police*, 2012-1040, p. 10 (La. App. 4 Cir. 2/6/13), 109 So. 3d 973, 980).

### *Timeliness of Investigation*

---

[1] The NOFD asserts the following assignments of error: 1) the Commission erred in finding that Deputy Chief Bourdais's April 19, 2024 video request was an inquiry and his receipt of the video constituted evidence collection under La. R.S. 33:2181 and 33:2186; 2) The Commission erred in finding that Deputy Chief Bourdais had access to the OneDrive file on April 19, 2024 and waited until May 2024 to view the video; 3) the Commission erred in overturning NOFD's valid disciplinary action based on NOFD's investigation beginning on May 19, 2024 rather than May 9, 2024; and 4) The Commission erred when it relied on the Louisiana Attorney General Opinion, No. 08-0291 in overturning NOFD's discipline of Mr. Bruner.

The NOFD argues that the Commission's finding was erroneous because it undermines this Court's decision in *Pitre v. Dep't of Fire*, 2021-0632 (La. App. 4 Cir. 2022), 338 So.3d 70 regarding when an investigation commences.

In *Pitre*, a firefighter was charged with making false statements during a formal investigation regarding another employee's worker's compensation claim. The NOFD sent a notification letter to the firefighter on July 8, 2020 and the firefighter was terminated on September 28, 2020. 2021-0632, pp. 2-4, 338 So.3d at 73-74. NOFD received an enhanced video footage of the firefighter's actions on August 7, 2020. *Pitre* at p. 3, 338 So.3d at 73. NOFD argued that the investigation into the firefighter did not commence until August 7, 2020. *Id.* at p. 10, 338 So.3d at 77. This Court found that the investigation commenced on July 8, 2020, when NOFD conducted an interrogation, not an initial inquiry. Specifically, the notification letter was issued to the firefighter detailing that he would be interviewed in connection with an investigation for violation of the NOFD Rules and Regulations. *Id.* at pp.13-14, 338 So.3d at 79.

Louisiana Revised Statute 33:2181, known as the Firefighters Bill of Rights, provides in relevant part:

> A. Unless context otherwise requires, the following terms when used in this Subpart shall be given the meanings assigned below:
>
> ***
>
> (2) "Interrogation" includes but is not limited to any formal interview, inquiry, or questioning of any fire employee by the appointing authority or the appointing authority's designee regarding misconduct, allegations of misconduct, or policy violation. An initial inquiry conducted by the fire employee's immediate supervisors shall not be considered an interrogation.
>
> B. Whenever a fire employee is under investigation, the following minimum standards shall apply:

***

(1) Prior to commencing a formal investigation of a fire employee, the appointing authority shall notify the employee in writing of the nature of the investigation, of the identity and authority of the person conducting such investigation, and of the specific charges or violations being investigated.

(2) The fire employee being investigated shall be informed in writing at the commencement of any interrogation of the nature of the investigation, of the identity and authority of the person conducting such investigation, of the identity of all persons present during such interrogation, and of the specific charges or violations being investigated. The fire employee shall be allowed to make notes.

***

(4) All interrogations of any fire employee in connection with the investigation shall be recorded in full. The fire employee shall not be prohibited from obtaining a copy of the recording or transcript of the recording of his statements, upon submitting a written request to the fire chief.

(5) The fire employee shall be entitled to the presence of his counsel or representative, or both, at any interrogation in connection with the investigation. The fire employee's representative or counsel shall be allowed to offer advice to the employee and to make statements on the record at any interrogation in the course of the investigation.

Moreover, "'[a]ny investigation of a fire employee which is conducted pursuant to this Subpart shall be completed within sixty days, including the conducting of any pre-disciplinary hearing or conference.' La. R.S. 33:2186(A). The fire department may petition the governing authority for an extension of time in which to complete its investigation upon a showing of good cause. La. R.S. 33:2186(B)." *Pitre* at p. 9, 338 So.3d at 77.

Here, at the November 15, 2024 hearing, Major Figueroa-Camps testified that on April 18, 2024, he reviewed the video of the EMS vehicles and forwarded it to Chief Keller. Major Figueroa-Camps further testified that on April 19, 2024, Chief Keller notified NOFD of the incident and on the same day, Major Figueroa-

Camps received an email from NOFD requesting access to the footage. Major Figueroa-Camps provided that he received another follow-up email requesting access to the video around May 9, 2024. Additionally, Fire District Chief Larry White testified that Deputy Chief Bourdais received a report from EMS and was aware of the incident involving Mr. Bruner before May 9, 2024.

We do not find that the Commission's decision undermines this Court's decision in *Pitre*. The facts in *Pitre*, are distinguishable, as the investigation into the firefighter began when NOFD made more than an initial inquiry into the firefighter's misconduct by conducting a formal interview. Here, we find that the investigation into Mr. Bruner commenced on April 19, 2024, when NOFD was informed of Mr. Bruner's misconduct and requested, and received evidence of his misconduct on the same date. NOFD's investigation into Mr. Bruner was completed on June 21, 2024, when Mr. Bruner was issued a letter informing him of his six-hour suspension. As such, NOFD was required to complete its investigation by June 19, 2024 and it failed to do so.

Lastly, we address NOFD's argument that the Commission erred when it relied on the Louisiana Attorney General's Opinion. The Commission explained in its decision:

> Although only advisory in nature, the Louisiana Attorney General has opined that "an investigation of a fire employee begins when an authorized person starts to make inquiries or collect evidence concerning a fire employee where the end result is 'with a view to possible disciplinary action, demotion, or dismissal.'" La. Att'y Gen. Op. No. 08-0291 (Jan. 29, 2009). *But see Bergeron v. City of Kenner*, 10-229 (La. App. 5 Cir. 10/26/10), 51 So.3d 143, 147 ("Attorney General Opinions are merely advisory and not binding authority").

We find that the Commission referenced the Louisiana Attorney General's Opinion for its persuasiveness, as the Commission explicitly noted that it was

6

merely advisory and not binding authority. Moreover, based on the facts and evidence presented in this matter, we do not find that the Commission relied on the Louisiana Attorney General's Opinion for its decision in reversing NOFD's disciplinary action for untimeliness. Therefore, we do not find merit in NOFD's argument.

## CONCLUSION

For the foregoing reasons, we affirm the Commission's decision.

**AFFIRMED**